Signed: February 15, 2007



_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 00-46807 TG
                                         Chapter 13
LEE B. KEPPERT and SHIRLEY
KEPPERT,

          Debtors.
_____/

**MEMORANDUM OF DECISION RE FEE APPLICATION**

Richard Seim ("Seim"), attorney for the above-captioned debtors (the "Debtors"), seeks an award of $21,977.10 in attorneys' fees and $136.74 in costs for his representation of the Debtors in this case. For the reasons stated below, his application will be denied, in part with prejudice and in part without prejudice.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The Debtors filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code on December 8, 2000. On December 22, 2000, Seim filed a statement disclosing the receipt of $1,150 in compensation from the Debtors for representing them in the chapter 7 case. The Debtors received a chapter 7 discharge on March 14, 2001. The Debtors' principal nonexempt asset was a right to collect

lottery payments.  These payments were due annually.  The trustee initiated efforts to recover this asset for the benefit of creditors.

As a result, to prevent the trustee from recovering this asset, beginning in April 2001, the Debtors attempted to convert the case to chapter 13.  The Court questioned whether the Debtors could do so after receiving a chapter 7 discharge and denied the proposed order converting the case without prejudice pending a hearing.  At the hearing, on July 6, 2001, the Debtors offered to vacate their discharge, and the case was converted to chapter 13.

A chapter 13 plan (the "Plan") was also filed on June 4, 2001. An order confirming the Plan was entered on December 4, 2001.  During the summer of 2002, the Debtors filed a motion to sell their residence free and clear of liens.  An order granting the motion was entered on July 10, 2002.  Shortly thereafter, the Debtors filed a motion to avoid three judgment liens on the sale proceeds which they claimed impaired their homestead exemption.  An order granting the motion was entered on September 6, 2002.

On May 25, 2004, the chapter 13 trustee filed an application to convert the case back to chapter 7 for failure to make the required Plan payments.  In response, the Debtors filed a motion to amend the Plan or for a hardship discharge.  The motion revealed that Shirley Keppert had died in January 2004 and that Lee Keppert was in his late 70s, unemployed, and in poor health.  It stated that, other than the three remaining annual lottery payments of $62,000 each, the other unpaid Plan payments totaled only $6,000.  It suggested that, rather than converting the case to chapter 7, the Plan be amended to relieve

2

Mr. Keppert of the obligation to make the remaining $6,000 in monthly payments.  The Trustee did not oppose the motion to amend.

A hearing was conducted on July 16, 2004 at which time a question was raised concerning why the chapter 13 trustee had not received the July 2004 lottery payment.  The hearing was continued to August 20, 2004.  On August 17, 2004, Mr. Keppert filed a document stating that they had been mistaken in stating previously that there were three remaining annual payments due, of $62,000 each, the first of which would be received in July 2004.  Instead, he asserted that there were three remaining annual payments to be received, of $87,000 each, due in 2005, 2006, and 2007.  The statement represented that the 2004 payment had been assigned to a creditor prior to the filing of the bankruptcy case.[1]

Based on this information, the August 20, 2004 hearing was continued to October 22, 2004, and the Debtors were directed to file another motion to amend the Plan.  The motion was filed on September 27, 2004.  The motion revealed that there were only two remaining lottery payments due, not three.  An order granting the motion was entered on November 10, 2004.

On January 25, 2006, the chapter 13 trustee filed a motion to convert the chapter 13 case back to chapter 7 on the ground that Mr. Keppert had failed to pay over to her that year's lottery payment. A hearing was conducted on the motion on March 17, 2006.  At the hearing, its was disclosed that Mr. Keppert had recieved a $61,000

---

[1] In a subsequent filing, they revealed that the assignment had been made in exchange for a cash advance.

3

lottery payment and had spent it for living expenses. However, at the hearing, $31,000, representing a portion of this payment, was tendered to the chapter 13 trustee.

The chapter 13 trustee accepted the $31,000 without prejudice to her right to the balance. Mr. Keppert represented that he was unable to repay the balance. He was given 20 days to file a motion to amend the Plan to conform his obligations with what he was able to pay. This time was later extended.

A motion to modify the Plan was filed on April 21, 2006. The motion was denied. An order granting the chapter 13 trustee's motion to convert the case to chapter 7 was entered on October 11, 2006. Neither Mr. Keppert nor his counsel appeared at the meeting of creditors in the chapter 7 case. It was later learned that Mr. Keppert had died on December 28, 2006.

On January 5, 2007, the chapter 7 trustee filed a motion for an order directing the California State Lottery Commission (the "Commission") to make the final lottery payment due to the trustee. The motion was set for hearing on February 7, 2007. The motion was granted by order entered on February 8, 2007. On December 26, 2006, Seim filed an application for compensation. The application was heard on February 7, 2007 and was taken under submission at that time.

**FEE APPLICATION**

**1. Inadequate Notice**

On December 28, 2006, Seim filed a fee application (the "Application") and notice of motion (the "Notice"). On January 4,

4

2007, he filed a certificate of service, evidencing service of the Application on numerous creditors and the chapter 7 trustee. The Application, which was served, does not reveal the date or time of the hearing on the Application. The Notice, which was not served, does reveal the date and time of the hearing. As a result, creditors did not receive adequate notice of the hearing and the Application must be denied pending the conduct a properly noticed hearing.

**2. Secretarial and Other Staff Time**

The Application states that the compensation requested reflects 27.95 hours of secretarial and other staff time. The Application states that the attorney's agreement with his clients provides that any such time directly traceable to a case will be billed to the client at rates ranging from $30 per hour to $85 per hour. The Court's Fee Guidelines do not permit compensation for secretarial or other staff time. The circumstances surrounding this case do not justify waiving this requirement. Of the fees requested, $2,242.75 reflect services provided by the attorney's secretary or other staff. Thus, this amount will be disallowed with prejudice.

**3. Dischargeability Action Time**

According to the time sheets, 7.10 hours of Seim's services for which compensation is requested were spent in connection with a lawsuit during 2001 involving Heller First Capital Corporation ("Heller"). The fees requested for these services total $1,233. In this adversary proceeding, Heller sought to except its debt from the Debtors' chapter 7 discharge. The proceeding was filed on March 12, 2001. When the Debtors converted their case to chapter 13, the

5

proceeding was stayed pending confirmation of the Plan. Shortly after the Plan was confirmed, the proceeding was dismissed.

The fees incurred in connection with this adversary proceeding were incurred in aid of the Debtors' fresh start in contemplation of their receiving a chapter 7 discharge. These fees are not entitled to be paid as a priority chapter 13 claim. Thus, this portion of the fees requested will also be disallowed with prejudice.

**4. Time During Initial Chapter 7 Case**

As stated above, the Debtors initially sought relief under chapter 7 of the Bankruptcy Code on December 8, 2000. Seim received a $1,150 retainer for his services in connection with this case. The case was converted to chapter 13 on July 11, 2001. Seim's request for fees appears to include the time incurred during this pre-conversion period. Seim is not entitled to a chapter 13 priority claim for services provided to a chapter 7 debtor. He is entitled to retain the $1,150 retainer to the extent the amount paid in not unreasonable with respect to the services provided.

Having reviewed the time sheets, the Court concludes that the $1,150 retainer was reasonable. However, the time spent prior to conversion of the case to chapter 7 and after conversion back to chapter 7 may not be included in the fee request. Unfortunately, the time sheets filed with the Court cut off a portion of the date on which the services were provided. Therefore, the Court is unable to compute the dates of the chapter 7 services as compared to the chapter 13 services. This problem must be remedied. Thus, no amount

6

may be allowed at this time. However, this disallowance of fees is without prejudice.

## CONCLUSION

Seim's application for allowance of $21,977.10 in attorneys' fees and $136.74 in costs is disallowed, in part with prejudice and in part without. The application was improperly noticed for hearing and must be renoticed. Secretarial and other staff time and time incurred during the chapter 7 phases of the case is disallowed with prejudice. Otherwise, the application is denied without prejudice pending submission of legible time sheets and a properly noticed hearing. The costs appear allowable. However, the Court will defer ruling on them pending a further hearing.

END OF DOCUMENT

```
 1                                COURT SERVICE LIST
 2   Richard Seim
 3   133 Race St.
     San Jose, CA 95126
 4
     Martha G. Bronitsky
 5   Chapter 13 Trustee
     P.O. Box 5004
 6   Hayward, CA 94540-5004
 7
 8
```